*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VANDERBUSH, Minors.

UNPUBLISHED
January 15, 2019

Nos. 343898; 343912
Monroe Circuit Court
Family Division
LC No. 17-024347-NA

Before: GLEICHER, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

The circuit court terminated respondent-parents' rights to their three children—CV, GV, and AV—based on an incident of sexual abuse between mother and CV, respondents' inability to control CV's behavior and the danger this caused to the other children, and respondents' failure to adequately address their children's special needs. Father contends that the Department of Health and Human Services (DHHS) failed to establish statutory grounds to terminate his parental rights and both respondents challenge that termination of their rights was in their children's best interests. We affirm.

## I. BACKGROUND

Child Protective Services (CPS) became involved with respondents' family based on an incident in March 2017. Mother asserted that her 11-year-old son, CV, was sick and was sleeping with her in the master bedroom. She awoke in the middle of the night to find CV attempting to penetrate her vagina with his penis. Mother's story changed over time regarding whether CV was successful. Mother claimed that she pretended to be asleep and did not stop CV because she wanted to test CV's knowledge and capability so she could better protect her other children. Respondents' family had been involved in intensive, home-based therapeutic services for approximately three years through Monroe Community Mental Health Authority (MCMHA) because of CV's severe issues. CV was autistic and acted out violently and sexually against others, including his family members. Over the years, the MCMHA had other concerns as well, including the deplorable condition of respondents' home and the unaddressed medical and other special needs of GV and AV.

Police immediately began investigating the March 2017 incident, but the children remained in respondents' home with additional safety restrictions until October 2017. When

conditions did not improve, the DHHS filed a petition seeking court jurisdiction over the children and termination of respondents' parental rights at the initial disposition. Specifically, GV was 10 years old and had not been toilet trained, was barely communicative, and respondents did not ensure that he wore leg braces or corrective footwear to treat issues related to cerebral palsy. Respondents had willfully failed to seek a diagnosis for GV's cognitive delays. AV was also developmentally delayed and suffered from attention deficit disorder. Later testing revealed that she suffered from fetal alcohol syndrome. The family's home was so cluttered that GV could not move around. And CV had punched holes in the walls, broken doors off the hinges, and pulled up the floor in places. Moreover, respondents still had not accepted that mother's management of the March 2017 incident with CV amounted to sexual abuse and they continued to place full blame on CV.

After removal, CV was shuttled between the home of his paternal grandparents and psychiatric facilities. GV and AV moved between the homes of relatives. The children were not kept together. With a few weeks of removal, GV's communication skills improved and he was mostly toilet trained. Respondents did not provide GV's leg braces or corrective shoes, so his grandparents were required to acquire new equipment. AV also began receiving treatment for her various issues.

Ultimately, the court terminated respondents' parental rights under various factors. They now appeal.

## II. STATUTORY FACTORS

Father challenges the evidentiary support for the statutory grounds underlying the circuit court's termination decision. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). When termination is sought at the initial disposition, the court's decision must be based on legally admissible evidence. MCR 3.977(E)(3). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The circuit court terminated father's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j), which, at the time the court entered its order, provided:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

* * *

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a

-2-

reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

With respect to factor (b)(*ii*), father argues that the court clearly erred by finding that he failed to prevent the sexual or physical abuse of GV and AV, because he sought services for CV through MCMHA years before the children were removed. He also reported CV to law enforcement when his behavior could not be controlled and looked into a possible guardianship with father's parents to remove CV from the family home. Father therefore contends that he took reasonable steps to seek help with CV's behavior and protect the other children.

Respondents did seek help to deal with CV's violent and sexually inappropriate behaviors. MCMHA even provided intensive, home-based therapy for the family. However, the evidence established that respondents did not consistently protect GV and AV from CV on a daily basis. Despite the services provided, CV still acted out, harmed his siblings, and generally controlled the entire household. Overwhelmed by CV, respondents allowed further harm to GV and AV by failing to address their special needs. Father could not handle both responsibilities— controlling CV and protecting and parenting GV and AV.

Father asserts that he will be able to protect GV and AV in the future if CV is removed from the home. Father's history of ignoring GV's and AV's needs belies his claim. Father's deference to mother also does not bode well. Father filed for divorce in 2016, but then dropped the case. Throughout these proceedings, father continued to state that he wished to remain married to mother and would divorce her only if required to regain custody of his children. Father continually refused to recognize mother's criminal behavior in her management of the

---

[1] MCL 712A.19b(3)(g) was amended by 2018 PA 58, effective June 12, 2018. As amended, § 19b(3)(g) now provides:

The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

March 2017 incident, instead blaming CV. And father took a passive role in parenting, allowing mother to decide not to seek treatment and diagnosis for GV's cognitive and developmental issues because she did not want GV to be "labelled."

Father's neglect of GV's and AV's special needs and failure to recognize the harm mother caused to CV further supports termination of father's parental rights under factor (g). When DHHS became involved with the family, GV was 10 and AV was six. GV still had not been toilet trained and was wearing diapers. GV had been prescribed leg braces and corrective footwear, which respondents did not employ. GV also had serious cognitive delays that had not been diagnosed, let alone serviced. GV's quick improvement upon removal demonstrated that respondents' earlier intervention would have been beneficial. Similarly, AV was not diagnosed with fetal alcohol syndrome until the children were removed. It took relatives outside the nuclear family to provide the care and custody GV and AV required. Again, this long history of neglect and father's failure to acknowledge the harm caused to all three children by mother's parenting style establish that father could not provide proper care and custody for his children in the future as well. Record evidence further established that father's own health issues rendered him dependent on mother, supporting that he would be unable to provide the care the children required either with or without mother.

In relation to factor (j), father accuses the circuit court of improperly penalizing him because he is an amputee, who relies on crutches or a wheelchair, and because he takes prescribed pain medications. The court did comment that father's own medical condition and narcotics use undermined his "parental (and judgmental) capacity." That remark, however, was related to father's decision to side with mother for years regarding the children's treatment, which raised concerns about his capacity to properly care for the children on his own. The court found that father was overly dependent on mother, even to the point of condoning her sexual activity with CV. The court found that father's views were "intertwined with his wife in perpetuating/allowing an environment of material, psychological, financial, and medical neglect of all three children for years." Factor (j) provides that the court may consider "the conduct *or capacity* of the child's parent" in determining whether a child is reasonably likely to be harmed if returned to the parent's home. Thus, it was not inappropriate for the circuit court to consider the degree to which father depended on and deferred to mother, especially where the court also found that his testimony about divorcing mother was not credible.

Based on this record, we discern no error in the court's finding of three separate statutory grounds supporting termination of father's parental rights.

### III. BEST INTERESTS

Both respondents challenge the circuit court's conclusion that termination of their parental rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the

parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The advantages of the child's foster placement over placement with the parent are a relevant consideration. *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). However, a child's placement with relatives weighs against termination, MCL 712A.19a(6)(a), and the court must expressly consider the child's relative placement in making its best-interest determination. *Olive/Metts*, 297 Mich App at 43. Where the best interests of siblings do not coincide, the court also must separately address whether termination of parental rights is in each sibling's best interests. *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014).

The only factor weighing in respondents' favor is their bond with their children. Respondents were the sole caregivers for their children until CV was 11, GV was 10, and AV was six, and they therefore enjoyed a strong bond with their children. However, neither parent could safely or adequately tend to CV's needs. In fact, no guardian could ensure GV's and AV's safety while residing with their brother, requiring separate placements to serve the interests of all the children.

The record sufficiently supports that termination was in the children's best interests despite their placement with relatives. GV and AV have greatly benefitted from their removal from the family home. Both have been properly diagnosed and plans to treat and monitor their conditions have been implemented. Both have shown significant improvement since their removal. Both GV and AV will require intensive assistance for many years and respondents' inability to provide even a portion of that assistance, even with the involvement of MCMHA, establishes that respondents will not be able to appropriately address the children's special needs in the future.

The separation of CV from his siblings does not negate that termination of respondents' parental rights was in GV's and CV's best interests. While removing CV may make matters easier for the family, respondents demonstrated severe deficiencies in judgment that established their inability to properly care for the children. Respondents blamed CV for the March 2017 sexual incident and did not understand why mother's conduct was inappropriate or improper. They failed to seek necessary assistance for GV because mother did not want him to be "labelled" and were unwilling to follow through with an appropriate evaluation and services for AV.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

-5-